UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 18-CR-00019-DLB

UNITED STATES OF AMERICA                                    PLAINTIFF

V.       **RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON THE MOTION TO SUPPRESS**

GARY KENDALL                                                DEFENDANT

\* \* \* \* \*

This Court should accept the Magistrate Judge's Recommended Disposition (DE 56) that Gary Kendall's Motion to Suppress be denied because there was no violation of the Fourth Amendment. Kendall did not have a reasonable expectation of privacy in the image he uploaded to the chatroom of Chatstep, and, as the Magistrate concluded, the government did not expand the private search that had been conducted by the electronic service provider when it reviewed the image without a warrant. Finally, even if a warrant was required to view the Cybertip image, which the government denies, the good faith exception applies and the images that were obtained through the search warrant should not be suppressed.

### A. Kendall Did Not Have a Reasonable Expectation of Privacy in the Chat Room.

A search only violates an individual's Fourth Amendment rights if he has a legitimate expectation of privacy in the area searched. *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000). In determining whether a legitimate expectation of privacy exists, the defendant must (1) demonstrate that he manifested a subjective expectation of privacy in the area searched, and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as objectively reasonable. *Id*.

Contrary to Kendall's suggestion to this Court, this case does not involve the government's warrantless review of an email that Kendall or society could have reasonably expected would remain private despite the fact that it was sent or held by a third party service provider. Kendall's Objections, p. 4. Rather, this case involves Kendall uploading an image into an Internet chat room where up to 50 anonymous users, some of whom could have been law enforcement or informants for law enforcement, could readily access the image.

A person does not have a legitimate expectation of privacy in information he voluntarily turns over to third parties. *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). The Sixth Circuit has found that users of materials for publication or public posting lack an expectation of privacy. *Guest v. Leis*, 255 F.3d 325, 332 (6th Cir. 2001). A number of district courts considering the privacy of internet chatrooms have concluded that participants lack a reasonable expectation of privacy in the materials posted. *United States v. Charbonneau,* 979 F. Supp. 1177, 1184-85 (S.D. Ohio 1997) (noting that the defendant who shared child pornography in private chatrooms "could not have a

reasonable expectation of privacy in the chat rooms," because "when Defendant engaged in chat room conversations, he ran the risk of speaking to an undercover agent."); *United States v. Bode*, 2013 WL 4501303, at *16 (D. Maryland Aug. 21, 2013) (concluding that the defendant "had no reasonable expectation of privacy in messages he sent to public chat rooms"); *Stiles v Balicki*, 2012 WL 395451, at *10 (D.N.J. Feb. 7, 2012) (concluding that the petitioner failed to establish a reasonable expectation of privacy in chatroom conversations); *United States v. Maxwell,* 45 M.J. 406, 417 (C.A.A.F. 1996) ("Expectations of privacy in e-mail transmissions depend in large part on the type of e-mail involved and the intended recipient. Messages sent to the public at large in [a] 'chat room' ... lose any semblance of privacy."); *see also Com. v. Proetto*, 2001 PA Super 95, ¶ 27, 771 A.2d 823, 831 (2001) ("Appellant could not have a reasonable expectation of privacy in his chat-room communications. When Appellant engaged in chat-room conversations, he did not know to whom he was speaking. Oftentimes individuals engaging in chat-room conversations pretend to be someone other than who they are. Appellant could not have a reasonable expectation of privacy in engaging in chat-room conversations."). Even when a person attempts to limit access to his publicly posted material to only certain users, once those users have access to the files, he has no control over the manner in which they use those files, and thus has no objectively reasonable expectation of privacy. *See United States v. Sawyer*, 786 F.Supp.2d 1352, 1356 (S.D. Ohio 2011)(finding no objectively reasonable expectation of privacy in files that defendant shared over the internet using a closed peer-to-peer file sharing program where access to the material was limited to his "friends").

It is undisputed that Kendall uploaded the image that generated the CyberTip into an Internet chat room on Chatstep. Chatstep was an online group chat room service. DE 52, sealed Exhibit "B;" and attached Exhibit "1." Chatstep allowed users to chat anonymously with no user registration or account creation. *Id.* In order to chat on the website, you simply logged onto www.chatstep.com, selected a room name, created a nickname, and joined the room. Exhibit "1." In order for a user to send an image, the user could simply "drag and drop" the image into the text box. *Id.* While Chatstep had a feature that allowed users to create password accessible chatrooms, in all the chatrooms there was a "report an image" button that was visible under each image that was uploaded. *Id.* If a participant in a chat room clicked on the "report an image" button, the IP address of the sender of that image would be revealed. *Id.*

Kendall could not have had a reasonable expectation of privacy in any image he uploaded into such a forum. Every time Kendall entered a chat room, he ran the risk that a law enforcement informant or agent could have been in the room posing as a person also interested in the illicit content that Kendall uploaded or attempted to upload. While the "report an image" button did not send a Cybertip to NCMEC or law enforcement or even the Chatstep developers, it did allow a user's IP address to be discovered by other users. Exhibit "1." An IP address is linked to a person's computing device and can be traced by law enforcement to reveal a person's identity. The mere existence of a "report an image" button under all the images that posted in the chat rooms should have alerted Kendall that he did not have a reasonable expectation of privacy in the material that he posted.

Furthermore, Chatstep's terms of service put Kendall on notice that his expectation of privacy was lacking. Chatstep's terms of service warned its users that it may preserve or disclose any information it believed was reasonably necessary to comply with a law, regulation, legal process, or governmental request; to protect the safety of any person; to address fraud, security or technical issues; or to protect Chatstep's rights or property. Exhibit "2." When Kendall voluntarily chose to use Chatstep's services, he also agreed to be bound by Chatstep's terms of service. Chatstep users were advised of the following:

> Your access to and use of the Service is conditioned on your acceptance of and compliance with these Terms. These Terms apply to all visitors, users and others who access or use the Service. By accessing or using the Service you agree to be bound by these Terms.

*Id.*

Kendall cannot demonstrate that any expectation of privacy he had on Chatstep was objectively reasonable because not only could anyone in the chat room "report" him, but the terms of service to which he agreed to be bound informed him that Chatstep itself could report him.

On remand from the Tenth Circuit, the district court in *Ackerman* concluded that the defendant lacked a reasonable expectation of privacy in his AOL account because AOL's terms of service had warned him not to engage in illicit activity on their site and when his account was terminated for the illicit content, he could not then claim a reasonable expectation of privacy when law enforcement looked at it later. *See United*

5

*States v. Ackerman*, 296 F. Supp. 3d 1267, 1272 (D. Kan. 2017)(hereinafter "*Ackerman II*"). Unlike AOL wherein users had to register and have accounts that could be terminated when they posted child pornography images, Chatstep users did not have accounts or registrations that the service could terminate until November 2017. However, before November 2017, Chatstep performed the functional equivalent of terminating a user's account after detecting child pornography. As explained by the Chatstep developer, after child pornography was detected by Photo DNA in the image uploaded by a user, the user was sent an error pop-up notification that the image would not post into the room. Exhibit "1." Chatstep also prevented any future postings from the user's IP address. *Id.*

Just like the defendant in *Ackerman II*, Kendall cannot claim a reasonable expectation of privacy in the child pornography image he uploaded to the chat room when law enforcement did not view the image until after (1) it had been uploaded for viewing by anonymous third parties in a room where users could "report an image," (2) Kendall had accepted Chatstep's terms of service which apprised him that Chatstep could disclose his material to law enforcement, and (3) per Chatstep's protocol, after PhotoDNA detected child pornography in the image he uploaded, he should have received an error pop-up notification alerting him that his image could not post to the chatroom, and he would have been unable to upload additional images from that IP address.

B.  <u>The Private Search Was Not Expanded</u>

Assuming *arguendo* that this Court believes that Kendall had a reasonable expectation of privacy in the image he uploaded in the chat room, his Motion to Suppress should still be denied because the law enforcement officer's review of the one image in the Cybertip was virtually certain to reveal what he had already been told by the electronic service provider about the image, i.e. that the image was child pornography.

In his Objections to the Magistrate's Recommendation, Kendall again misstates facts and misconstrues the law.  First, Kendall continues to misstate how many images were involved in the Cybertip. Kendall's Objections, p. 1.  There was only *one image* on the Cybertip, not five.  DE 52, Sealed Exhibit "A."  Second, contrary to Kendall's argument, the images found as a result of the search warrant were not the same as the *one image* reported by the Cybertip.  DE 52, Sealed Exhibit "C." Third, Kendall's internet provider did not report to NCMEC that they suspected images of child pornography had been uploaded by Kendall onto electronic devices owned by him. Kendall's Objections, pp. 2-3. Chatstep, an electronic service provider that ran a chat room full of anonymous users, sent NCMEC the Cybertip because an image Kendall uploaded to its chat room service had been found to be child pornography. DE 52, Sealed Exhibit "A", and Exhibit "1."

Fourth, despite Kendall's continued fixation on NCMEC, whether NCMEC is a governmental entity or a private entity has nothing to do with the analysis here because NCMEC did not open the Cybertip image. DE 52, Sealed Exhibit "A." Contrary to Kendall's argument, the Magistrate did not premise his recommendation to deny the

Motion to Suppress on NCMEC's status as a private entity. Kendall's Objections, pp. 3-4. Rather, the Magistrate correctly found that Kendall's reliance on the discussion of NCMEC in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) was not supported by the facts of this case. DE 56, pp. 3-4

Fifth, contrary to Kendall's argument, KSP did not expand the private search in this case by getting a search warrant and finding additional images on devices seized during the execution of the warrant. Kendall's Objections, p. 5. As the Magistrate recommended, the logic the Fifth Circuit recently employed in *United States v. Reddick*, 900 F.3d 636, 639-40 (5th Cir. 2018) applies equally in this case and supports the determination that there was a private search conducted by Chatstep and it was not expanded by law enforcement. In *Reddick*, the Fifth Circuit found that when law enforcement viewed the file that had been found by Microsoft PhotoDNA through hash value matching, it "effectively learned nothing that it had not already learned from the private search." *Id.* The Fifth Circuit determined that whatever expectation of privacy the defendant might have had in the hash values of his files had been frustrated by the private party prior to law enforcement's review. *Id.*

Similarly, by the time the law enforcement officer viewed the image Kendall had uploaded, any expectation of privacy Kendall had in the hash values of the image had been frustrated by Chatstep having sent it to Photo DNA Cloud Service for hash value matching. Chatstep, with its two employees, did not view or hash images of child pornography itself, but used Microsoft Photo DNA Cloud Service to search for child pornography images that its users uploaded in its chat rooms. DE 52, Sealed Exhibit D; Exhibit "1" and Exhibit "3."

8

Chatstep would transmit any image that its users uploaded into its chat rooms to Microsoft Photo DNA Cloud Service where the image would be hashed and the hashes then compared against the Photo DNA Cloud Service hash datasets of known child sexual abuse imagery, i.e. child pornography. Exhibit "3." When the image Kendall uploaded to Chatstep was found to have a hash value match to an image in the known datasets in the Photo DNA Cloud Service, Chatstep forwarded it to NCMEC with a notification that the image contained child pornography. Exhibits "1" and "3."

As the Magistrate correctly recognized, hash value matching is 99.99% reliable. The Fifth Circuit in *Reddick*, the Eighth Circuit in *United States v. Cartier*, 543 F.3d 442, 446 (8th Cir. 2008), the Tenth Circuit in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), and this Court in *United States v. Miller*, 2017 WL 2705963, *3 (E.D. KY June 23, 2017), have all recognized the reliability of hash values and hash value matching to determine if an image is or is not contraband. An officer who comes into receipt of an image deemed to be child pornography through hash matching can be virtually certain the image will be child pornography when he views it. Accordingly, in this case, when the officer viewed the one image that had been matched to an image of known child pornography, he did not expand the private search, and could seek additional legal process and warrants to further his investigation.

Finally, there were no electronic service providers acting as government agents in this case, and Kendall has not met his burden of proof to show otherwise. Exhibits "1" and "3." Kendall did not even suggest that Chatstep was a government agent in his Motion to Suppress. Every court to address the status of electronic service providers in situations

9

wherein they voluntarily report child pornography to NCMEC has found them to be private actors. *Miller*, *3. There is nothing to otherwise distinguish the electronic service provider in this case as anything but a private actor. *See* Exhibit "1" and Exhibit "3." Furthermore, this Court has already rejected Kendall's theory that the statutory reporting requirements for child pornography transforms electronic service providers into government agents. *Miller,* *3.

      C.  <u>The Good Faith Exception to the Exclusionary Rule Applies</u>

Regardless of whether this Court finds that Kendall had a reasonable expectation of privacy in the image he uploaded to share with third parties in the chat room or the private search by the electronic service provider was expanded, the images found from the execution of the search warrant should not be suppressed. The good faith exception should apply, and the evidence from the warrant should be admissible.  The Sixth Circuit has yet to decide a case with these particular facts, and it would be objectively reasonable for an officer who received a Cybertip with a single image from an electronic service provider using Photo DNA to believe that his review of the image the service provider deemed to be child pornography would not expand the private search, but that it would merely confirm what he had already been told, i.e. that the image was child pornography. Again, hash value matching is a reliable way to determine if an image is child pornography, and there was only one image in this case. As suggested by the Eighth Circuit in *Cartier*, an officer may simply rely on the hash value matching to establish probable cause for a warrant. Accordingly, the evidence gathered from the search warrant in this case should not be excluded.

**CONCLUSION**

For the foregoing reasons and those previously stated in the Opposition to the Motion to Suppress, the United States requests that this Court deny Kendall's Motion to Suppress.

        Respectfully submitted,

        ROBERT M. DUNCAN, JR.
        UNITED STATES ATTORNEY

By:   /s/ Emily K. Greenfield
       Emily K. Greenfield
       Assistant United States Attorney
       260 West Vine Street, Suite 300
       Lexington, KY 40507-1612
       (859) 685-4811
       Emily.Greenfield@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF filing system, which will send an electronic notice to counsel of record.

       /s/ Emily K. Greenfield
       Assistant United States Attorney