# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

CRIMINAL ACTION NO. 18-19-DLB-EBA

UNITED STATES OF AMERICA                               PLAINTIFF

v.           **ORDER ADOPTING REPORT AND RECOMMENDATION**

GARY KENDALL                                               DEFENDANT

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court upon Magistrate Judge Edward B. Atkins's Report and Recommendation ("R&R"), (Doc. # 56), wherein he recommends that Defendant Gary Kendall's Motion to Suppress, (Doc. # 50), be denied. Defendant having filed Objections to the R&R, (Doc. # 57), and the Government having responded to Defendant's Objections, (Doc. # 61), the R&R is now ripe for the Court's review. For the reasons set forth herein, Defendant's Objections are **overruled**, the R&R is **adopted in full**, and the Motion to Suppress is **denied**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2017, Chatstep, a private online chatroom company, notified the National Center for Missing and Exploited Children ("NCMEC") that a file containing an image of suspected child pornography (the "Chatstep file") had been uploaded to a Chatstep forum. (Doc. # 52 at 1). Chatstep used Microsoft PhotoDNA Cloud Service ("Microsoft PhotoDNA"), a program that "automatically scans and compares the hash values of known child pornography images to the hash values of user-uploaded files and

1

images" to detect the file. *Id.* at 5. A hash value is "a sort of digital fingerprint," and is considered a highly-reliable method of identifying an image on the internet. (Doc. # 56 at 7) (quoting *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016)). In addition to the Chatstep file's hash value, Microsoft PhotoDNA provided Chatstep with "the date and time the file was uploaded, the screen or username of the person being reported, and an IP address" of the computer that uploaded the file. (Doc. # 56 at 1). Without opening the file, Chatstep provided all the information it learned from Microsoft PhotoDNA to NCMEC. *Id.* NCMEC staff also did not open or view the file. (Doc. # 52 at 2). Instead, NCMEC traced the Chatstep file's IP address to Greenup, Kentucky and provided the file and other data to the Kentucky State Police ("KSP") on March 2, 2017. *Id.* A KSP detective opened the Chatstep file and confirmed that it appeared to be child pornography. (Doc. # 56 at 1). The detective then conducted independent research and traced the file's IP address to Defendant Kendall's residence. *Id.* Based on this information, KSP obtained a search warrant for Kendall's residence, where they found "multiple electronic devices containing images of child pornography." (Doc. # 56 at 2).

A federal grand jury indicted Defendant Kendall on December 6, 2018. (Doc. # 1). The Indictment charged Defendant with one count of possessing child pornography. *Id.* On August 9, 2019, Defendant filed a Motion to Suppress "any and all evidence seized from [Defendant] Kendall." (Doc. # 50 at 1). After the United States filed its Response, (Doc. # 52), Judge Atkins entered an R&R on August 30, 2019, (Doc. # 56), wherein he recommended that Defendant's Motion to Suppress, (Doc. # 50), be denied. (Doc. # 56 at 9). On September 13, 2019, Defendant filed Objections to the R&R, (Doc. # 57), to

which the United States responded on October 15, 2019.[1]  (Doc. # 61).  The Motion to Suppress, (Doc. # 50), and the R&R, (Doc. # 56), are now ripe for review.

## II. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation.  "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact."  Fed. R. Crim. P. 59(b)(1).  If a party files timely objections to the recommendation, the district court must consider those objections de novo and "accept, reject, or modify the recommendation."  Fed. R. Crim. P. 59(b)(3).  Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections.  Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  Therefore, objections to a magistrate judge's R&R must be "specific."  Fed. R. Crim. P. 59(b)(2).  Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are

---

[1] The Court previously granted the government's unopposed Motion to Extend the Deadline to Respond to Defendant's Objections.  (Docs. # 59 and 60).
In its Response, the government raises two new arguments in opposition to Defendant's Motion to Suppress.  First, the government argues that Defendant did not have a reasonable expectation of privacy in the images that he shared on the Chatstep forum.  (Doc. # 61 at 2–6).  Second, the government argues that the good-faith exception applies to the evidence found during the execution of the search warrant.  Because arguments raised for the first time in responsive pleadings are not properly before the Court, *see Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), the Court will not consider these arguments.

"tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). Objections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are similarly improper. *United States v. Bowers*, No. 0:06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017); *United States v. Vanover*, No. 2:10-cr-14-DLB-REW, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017).

Here, Defendant raises two main objections to the R&R. (Doc. # 57). First, Defendant objects to Judge Atkins's finding "that NCMEC was acting purely as a private entity in this case." *Id.* at 3–5. Second, Defendant objects to Judge Atkins's determination that NCMEC and KSP did not exceed the scope of the private search performed by Chatstep. *Id.* at 4–7. The Court will address each of Defendant's objections in turn.

**B.   Judge Atkins did not find that NCMEC was a private actor.**

The Fourth Amendment protects individuals from "unreasonable searches and seizures" *by the government*, not by private entities. U.S. Const. amend. IV. Indeed, the Fourth Amendment "is wholly inapplicable" to searches and seizures by "a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984) (internal quotation marks omitted). The Sixth Circuit uses a two-part test to determine whether a private entity is a government agent for the purposes of the Fourth Amendment.

"In the context of a search, the defendant must demonstrate two facts: (1) [l]aw enforcement 'instigated, encouraged or participated in the search' and (2) the individual 'engaged in the search with the intent of assisting the police in their investigative efforts.'" *United States v. Hardin*, 539 F.3d 404, 419 (6th Cir. 2008) (quoting *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985)).  If the defendant cannot show both facts, then the private actor is not a government agent.

Here, Defendant claims that Judge Atkins incorrectly found that NCMEC was acting as a private entity.  (Doc. # 57 at 5).  Defendant argues that had Judge Atkins applied the two-part *Hardin* test, he would have found that NCMEC was a government actor.  *Id.* at 5–6.  As an initial matter, Defendant mischaracterizes Judge Atkins's finding.  Judge Atkins did not definitively say whether NCMEC was acting as a private entity or as a government agent.  (Doc. # 56 at 2–4).  Rather, Judge Atkins recommended that Defendant's Motion to Suppress be denied because he found that NCMEC did not conduct a "search in violation of the Fourth Amendment," not because he found that NCMEC was a private actor.  (Doc. # 56 at 9).  Furthermore, even if NCMEC is a government actor as Defendant argues,[2] it would not change the outcome of this matter because NCMEC did not exceed the scope of the search done by Chatstep, a private actor.  *See infra*.  Accordingly, Defendant's misguided objection that Judge Atkins erred by characterizing NCMEC as a private actor is **overruled**.

---

[2]    "The Sixth Circuit has not yet determined whether NCMEC itself is a government actor." *See United States v. Miller*, No. 2:16-cr-47, 2017 WL 2705963, at *3 (E.D. Ky. June 23, 2017).  Because it would not change the outcome of this matter, the Court will not take up the issue here.

### C. NCMEC and KSP did not violate the private search doctrine.

It is well established that a government actor does not violate the Fourth Amendment by replicating a search done by a private individual. *Jacobsen*, 466 U.S. at 116. The Fourth Amendment is only implicated if the government *exceeds* the scope of the prior search done by a private individual. *Id*. "Under the private search doctrine, the critical measures of whether a governmental search exceeds the scope of the private search that preceded it are how much information the government stands to gain when it re-examines the evidence and, relatedly, how certain it is regarding what it will find." *United States v. Lichtenberger*, 786 F.3d 478, 485–86 (6th Cir. 2015) (citing *Jacobsen*, 466 U.S. at 119–20). With respect to child pornography, the Sixth Circuit has held that a government search does not exceed the scope of the private search and therefore was permissible when "the officers in question had near-certainty regarding what they would find and little chance to see much other than contraband," "'learn[ed] nothing that had not previously been learned during the private search,' and 'infringed no legitimate expectation of privacy.'" *Id.* (alteration in original) (quoting *United States v. Bowers*, 594 F.3d 522, 526 (6th Cir. 2010)). Here, neither NCMEC[3] nor KSP exceeded the scope of the search done by Chatstep.

#### 1. NCMEC

Defendant claims that Judge Atkins's finding the NCMEC acted lawfully is "disenguineness [sic] because . . . [NCMEC] was acting as an arm of the government." (Doc. # 57 at 6). Defendant's objection to NCMEC's conduct appears to be based almost exclusively on *United States v. Ackerman*, where the Tenth Circuit held that NCMEC

---

[3] While the Court declines to determine if NCMEC is a government actor, *see supra*, it will assume *arguendo* that NCMEC acted as a government actor in this case.

violated the Fourth Amendment because: (1) NCMEC was a government actor; and (2) it exceeded the scope of the earlier private search. (Doc. # 57 at 6); (discussing *Ackerman,* 831 F.3d at 1306–07). Defendant's objection is improper for two reasons.

First, the objection is merely a restatement of an argument that Judge Atkins has already considered. In his Motion to Suppress, Defendant argued that, based on *Ackerman*, "NCMEC is a governmental entity and as such a search warrant is required." (Doc. # 50 at 2). In his R&R, Judge Atkins carefully explained why a search warrant is not required and why *Ackerman* is not applicable. (Doc. # 56 at 3). An objection must be more than a bare restatement of an issue that was already considered by the magistrate. *Bowers*, 2017 WL 6606860, at *1. As this issue was already considered by Judge Atkins and is merely a restatement of a previous argument, it will be overruled.

Even if it were not repetitive, the objection will still be overruled because Defendant's parallel to *Ackerman* is misguided; unlike in *Ackerman*, in this case NCMEC did not violate the private search doctrine. In *Ackerman*, NCMEC opened an email and three previously unopened attachments to confirm that the files contained images of apparent child pornography. *Ackerman*, 831 F.3d at 1306. The Tenth Circuit found that opening the email and the attachments exceeded the scope of the previous search and, therefore, violated the Fourth Amendment. *Id.* at 1308. In this case, however, NCMEC only repeated the search done by Chatstep. (Doc. # 56 at 3). Like Chatstep, NCMEC did not open or view the Chatstep file, it merely provided the file and the related data to KSP. (Doc. # 56 at 3). Because NCMEC did not exceed the scope of the private search done by Chatstep, it did not violate the private search doctrine. Accordingly, Defendant's objection that NCMEC conducted an unlawful search is **overruled**.

### 2. *KSP*

KSP also did not exceed the scope of Chatstep's private search. Defendant contends that KSP violated the private search doctrine because, unlike Chatstep, KSP opened and viewed the Chatstep file. (Doc. # 56 at 4). While Defendant is correct that KSP opened the file, that fact alone is insufficient to find that KSP exceeded the scope of Chatstep's search.

The Supreme Court first articulated the private search doctrine in *Jacobsen*, which began with FedEx employees examining the contents of a damaged package. *Jacobsen*, 466 U.S. at 111. Inside the cardboard container, the employees discovered a ten-inch tube made of duct tape, which, when they cut it open, revealed four plastic bags filled with white powder. *Id.* FedEx called the DEA and put the tube and its contents back in the box. *Id.* The DEA agent inspected the partially open container, removed the plastic bags, and field-tested them for cocaine. *Id.* at 112. The Supreme Court held that the DEA agent's inspection of the plastic bags and testing of the powder remained within the scope of FedEx's prior search because "there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he had already been told." *Id.* at 119.

In *Lichtenberger*, the Sixth Circuit applied *Jacobsen* to an officer's search of a defendant's laptop for child pornography, holding that, in order for the government's search to be within the scope of the earlier private search, the government official "had to proceed with 'virtual certainty' that the 'inspection of the [laptop] and its contents would not tell [him] anything more than he had already been told'" by the defendant's girlfriend, the private searcher. *Lichtenberger*, 786 F.3d at 488. The court ruled in that case that

the officer did not have "virtual certainty" that what he viewed would be the same child pornography the girlfriend reported because it was not at all clear that she showed him the same images she had previously looked at. *Id.* at 491. There was "a very real possibility," the court concluded, that the detective "could have discovered something *else* on Lichtenberger's laptop that was private, legal, and unrelated to the allegations prompting the search—precisely the sort of discovery the *Jacobsen* Court sought to avoid in articulating its beyond-the-scope test." *Id.* at 488–89.

There is no such possibility here. The digital fingerprints created by the hashing technology made it a "virtual certainty" that when the KSP detective viewed the Chatstep file, all he would see was the image Microsoft PhotoDNA previously identified as apparent child pornography. There was no likelihood here, as there was in *Lichtenberger*, that the file would "contain 1) many kinds of data, 2) in vast amounts, and 3) corresponding to a long swath of time." *Lichtenberger*, 786 F.3d at 488. Because the file had the same hash value as the image Microsoft PhotoDNA classified as child pornography, (Doc. # 56 at 6), the detective had "little chance to see much other than contraband." *Id.* at 486. Opening the Chatstep file "would not tell [the KSP detective] anything more than he had already been told" by the hash value. *Id.* at 119.

Nevertheless, Defendant objects to Judge Atkins's reliance on Microsoft PhotoDNA and questions the accuracy of hashing technology.[4] (Doc. # 57 at 7).

---

[4] Defendant also claims that the "the Court's use of the hash system violated Kendall's constitutional right of confrontation." (Doc. # 57 at 7). This claim, however, is an improper conclusory objection. *See Cole*, 7 F. App'x at 356. Additionally, Defendant does not cite any case law supporting his claim that using an automatically computer-generated report like Microsoft PhotoDNA violates the Confrontation Clause. *See generally* (Doc. # 57 at 7). Hashing technology has been accepted as reliable evidence by many courts, and none have raised concerns about the Confrontation Clause. *See generally United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018); *United States v. Ackerman*, 831 F.3d 1292; *United States v. Bradley*, 488 F. App'x 99, 101 (6th

9

Defendant's general objection to the accuracy of hashing technology, without any evidence to support his claim, is insufficient overrule Judge Atkins's reasoned finding that hash values are "highly reliable." (Doc. # 56 at 7). A hash value "is not a mere label." *Miller*, 2017 WL 2705963, at *4. Rather, hash matching is a highly accurate technology that has been relied on by many courts. *See, e.g.*, *United States v. Reddick*, 900 F.3d at 639 ("[H]ash value comparison 'allows law enforcement to identify child pornography with almost absolute certainty.'") (quoting *United States v. Larman*, 547 F. App'x 475, 477 (5th Cir. 2013)); *United States v. Ackerman*, 831 F.3d 1292 ("Some consider a hash value as a sort of digital fingerprint"); *United States v. Bradley*, 488 F. App'x at 101 (describing hash values as "digital fingerprints").

On facts nearly identical to this case, the Fifth Circuit in *Reddick* held that the police did not exceed the scope of the earlier private search when the officer opened an image that had already been identified as apparent child pornography by Microsoft PhotoDNA. *Reddick*, 900 F.3d at 639. There, the court explained that the officer's "visual review of the suspected images—a step which merely dispelled any residual doubt about the contents of the files—was akin to the government agents' decision to conduct chemical tests on the white power in *Jacobsen*" because it was virtually certain that the image was child pornography. *Id.* Like in *Reddick*, the KSP detective's opening of the Chatstep file in this case was akin to the chemical tests in *Jacobsen*. Thus, the KSP detective stayed within the scope of the earlier search Chatstep performed.

Finally, the KSP did not, as Defendant claims, "expand the private search when the police seized several images from five devices" in Defendant's home. (Doc. # 57 at

---

Cir. 2012). Thus, Defendant's unsupported argument that using Microsoft PhotoDNA violates the Confrontation Clause is misguided.

10

5). KSP was executing a lawfully obtained search warrant when they confiscated the devices found in Defendant's home. (Doc. # 56 at 1–2). Police do not violate the Fourth Amendment when they act pursuant to a lawful search warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967). Because the KSP did not violate Defendant's Fourth Amendment rights either by viewing the Chatstep image or by seizing the devices found in Defendant's home, Defendant's objection to KSP's conduct is **overruled**.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that:

(1) The Magistrate Judge's Report and Recommendation (Doc. # 56) is hereby **adopted**;

(2) Defendant Kendall's Objections (Doc. # 57) are **overruled**;

(3) Defendant Kendall's Motion to Suppress (Doc. # 50) is **denied**;

(4) The time period from August 9, 2019 through today's date, totaling 89 days, is **excluded** from the provisions of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D)&(H); and

(5) This matter is scheduled for a **Status Conference** on **Tuesday, November 12, 2019 at 11:30 a.m. in Ashland**.

This 6th day of November, 2019.



Signed By:
*David L. Bunning*
**United States District Judge**

K:\DATA\ORDERS\Ashland Criminal\2018\18-19 Order re R&R.docx